ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI (DJ 2025-063B)

| | | |
|---|---|---|
| FIVE DEVELOPMENT CORPORATION; CCVA, INC.; FIVE DEVELOPMENT HOLDINGS, INC.; PÉREZ DIEZ DEVELOPMENT CORP.; RIVERA PARK DEV., CORP.; GURABO FAST FOOD, INC.; REALITY DEVELOPMENT CORP.; PUERTA DE TIERRA REALTY, INC.; SANTA REAL REALTY, INC.; CANGREJO NORTE CORP.; CONSTRUCTORA DEL REY, INC.; CANGREJO ARRIBA DEVELOPMENT CORP.; SALINAS SHOPPING COURT CORP.; LA QUINTA SHOPPING CENTER CORP.; EDIFICIO BULA, INC.; SANTA MARÍA SHOPPING COURT CORP.; PLAYA 602, INC.; INMOBILIARIA SANTURCE  CORP.; QUINTANA HOLDING CORP.; RPM JUNTOS, INC.; RANCHO ARRIBA 18 CORP.; ANACONDA LAND DEVELOPMENT CORP.; HACIENDA DEL INGENIO, INC.; PM VICTORIA HOLDINGS CORP.; RAFAEL PÉREZ MATOS, CELENE DIEZ BRASCHI, y la sociedad legal de bienes gananciales compuesta entre ellos; RAFAEL PÉREZ DIEZ, Apelante, v. BANCO POPULAR DE PUERTO RICO, INC.; COMPAÑÍA ASEGURADORA ABC, Apelada. | TA2026AP00478 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de San Juan. Civil núm.: SJ2020CV01682. Sobre: daños y perjuicios; incumplimiento de contrato; dolo y mala fe contractual; responsabilidad del prestamista ("lender's liability"). |

Panel integrado por su presidenta, la jueza Romero García, el juez Monge Gómez y la jueza Prats Palerm.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 16 de junio de 2026.

Five Development Corporation y otros (Five Corporation o parte apelante), instó el presente recurso de apelación el 8 de mayo de 2026. En este, solicitó que revoquemos la *Sentencia Parcial* emitida el 9 de marzo de 2026, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de San Juan. Mediante la referida sentencia, el foro primario declaró con lugar la solicitud de sentencia sumaria parcial presentada por el Banco Popular de Puerto Rico (BPPR o parte apelada), y declaró sin lugar la solicitud de desestimación presentada por la parte apelante. En consecuencia, el foro recurrido dictó sentencia declaratoria respecto a la primera causa de acción de la reconvención.

Por los fundamentos que expondremos a continuación, se **confirma** la *Sentencia Parcial* apelada.

I

El 24 de febrero de 2020, Five Corpotation, más otras veintitrés (23) corporaciones, los señores Pérez Diez y Pérez Matos, así como la señora Diez Braschi[1], presentaron una demanda sobre daños y perjuicios, incumplimiento de contrato, dolo, mala fe contractual y responsabilidad del prestamista "lender's liability" contra el BPPR y una compañía aseguradora de nombre desconocido[2]. En síntesis, indicaron que, debido al cierre de Westernbank por parte del Federal Deposit Insurance Corporation (FDIC), el BPPR adquirió dos préstamos que estos adeudaban a dicha institución financiera. Alegaron que el BPPR los forzó a admitir la supuesta existencia del incumplimiento con los préstamos en cuestión y a suscribir una serie de documentos para la restructuración de estos, el aumento de sus intereses

---

[1] El 10 de junio de 2025, el señor Pérez Matos y la señora Diez Braschi solicitaron desistir con perjuicio de sus reclamaciones en su carácter personal, lo cual el foro primario concedió mediante *Sentencia Parcial* emitida el 9 de marzo de 2026. Entrada 342 del *Sistema Unificado de Manejo y Administración de Casos* del Tribunal de Primera Instancia (SUMAC TPI).

[2] Entrada 1 SUMAC TPI.

y el acortamiento de sus vencimientos[3]. Lo anterior, presuntamente ocurrió mediante amenazas, maquinaciones insidiosas, dolo, coacción, coerción, mala fe y engaño.

Los apelantes sostuvieron que el BPPR los obligó a incluir relevos en los contratos a favor de dicha entidad bancaria. Asimismo, alegaron que el BPPR incurrió en responsabilidad civil extracontractual al haberse retirado abruptamente de las negociaciones para la venta de las Notas A y B a la institución financiera, Bixby Bridge Capital, por la cantidad de $41.2 millones. Adujeron que el BPPR le vendió los préstamos en cuestión a la entidad Condado 6, LLC, por un precio inferior y que dicha transacción se consumó el 31 de julio de 2019.

A tenor con lo anterior, solicitaron la siguiente compensación: (a) $9.2 millones en concepto de intereses en exceso de los originalmente pactados con Westernbank; (b) daños a la reputación y el buen crédito de los demandantes-apelantes; (c) daños por el exceso sobre $41.2 millones que tengan que pagar a Condado 6 para comprar los préstamos; y, (d) daños y angustias mentales sufridos por los señores Pérez Matos, Pérez Diez y Braschi, que valoraron en un millón de dólares cada uno, más las costas, intereses y honorarios de abogados.

El 20 de diciembre de 2021, el BPPR presentó su *Contestación enmendada a demanda y reconvención*, mediante la cual negó las alegaciones formuladas en su contra y precisó ciertas defensas afirmativas[4]. En lo pertinente a la reconvención, incluyó las siguientes reclamaciones: (a) sentencia declaratoria e incumplimiento intencional de los demandantes-reconvenidos-apelantes con el pacto de no demandar, y las renuncias y relevos a favor del BPPR; (b) daños como producto de actuaciones de mala fe; y, (c) daños producto del quebrantamiento de la

---

[3] Los contratos suscritos son: (i) "Amended and Restated Credit Agreement" del 13 de diciembre de 2013; (ii) "First Amendment to Amended and Restated Credit Agreement and Other Loan Documents" del 3 de febrero de 2014; (iii) "Second Amendment to Amended and Restated Credit Agreement and Other Loan Documents" del 22 de enero de 2015; (iv) "Forbearance Agreement and Third Amendment to Credit Agreement" del 22 de enero de 2015; y, (v) "Moratorium, Forbearance and Amendment Agreement" del 23 de octubre de 2017.

[4] Entrada 100 SUMAC TPI.

doctrina de actos propios. En particular, el BPPR sostuvo que la parte apelante suscribió, de manera libre y voluntaria, el *Contrato de Préstamo Enmendado*, así como la primera, segunda y tercera enmienda al mismo, y el *Acuerdo de Moratoria*. Afirmó que la parte apelante había recibido asesoramiento legal durante todo el proceso de negociación. Señaló que el *Contrato de Préstamo Enmendado* contiene una renuncia y relevo de reclamaciones por la parte apelante a favor del BPPR. Apuntó que no tenía obligación de obtener el consentimiento de la parte apelante para transferir el contrato de préstamo, según enmendado, a un tercero. Además, alegó que la parte apelante carecía de legitimación activa para formular una causa de acción por la supuesta culpa *in contrahendo*.

En atención a la reconvención, y al amparo de la Regla 59 de Procedimiento Civil, 32 LPRA Ap. V, el BPPR solicitó que el tribunal declarara que las renuncias, los relevos y los compromisos de no demandar al BPPR suscritos por los demandantes eran válidos y vinculantes.

El 13 de enero de 2022, la parte apelante presentó su réplica a la reconvención[5].

Posteriormente, las partes litigantes presentaron ciertas mociones dispositivas. Así las cosas, el 30 de junio de 2023, notificada el 5 de julio de 2023, el foro primario dictó *Sentencia Parcial*[6]. En resumen, determinó "la validez *prima facie* de los relevos de responsabilidad suscritos por la parte demandante con posterioridad al 2010, año en que el BPPR advino en la titularidad de los préstamos, y con anterioridad al 23 de octubre de 2017, fecha en la que se suscribió el último de los documentos del préstamo, es decir, el acuerdo de moratoria"[7].

Luego de varias incidencias procesales, el 25 de abril de 2024, el BPPR presentó una solicitud de sentencia sumaria sobre la primera causa

---

[5] Entrada 108 SUMAC TPI.

[6] Entrada 237 SUMAC TPI. Véase, *Sentencia* emitida el 30 de noviembre de 2023, por este tribunal apelativo, en la cual se confirmó la *Sentencia Parcial* dictada el 30 de junio de 2023 por el foro primario. Entrada 263 SUMAC TPI.

[7] Entrada 237 SUMAC TPI, a la pág. 27.

de acción de la reconvención[8]. En síntesis, señaló que la parte apelante se había obligado a no demandar al BPPR a base de los hechos previos o contemporáneos a la firma de los acuerdos en cuestión. Por ello, solicitó que se declarara que, al presentar la presente reclamación judicial en su contra, la parte apelante había incumplido sus obligaciones contractuales pactadas en el *Contrato de Préstamo Enmendado*, así como en las subsiguientes enmiendas, y en el *Acuerdo de Moratoria*. Asimismo, manifestó que las determinaciones de hechos y conclusiones de la *Sentencia Parcial* del 30 de junio de 2023 resultaban vinculantes y dispositivas con relación a dicha causa de acción.

El 10 de mayo de 2024, la parte apelante presentó su oposición a la solicitud de sentencia sumaria[9]. En resumen, sostuvo que la mencionada solicitud no cumplía con la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V. Alegó que la primera causa de acción en la reconvención era, en esencia, una reclamación en daños por la presentación de un pleito civil, la cual no es reconocida por nuestro ordenamiento. Añadió que, a la fecha en que se presentó la demanda, el foro primario ni este tribunal apelativo se habían pronunciado respecto a las reclamaciones que habían sido renunciadas en virtud de los relevos, y las que subsistirían.

El 10 de mayo de 2024, la parte apelante también presentó una moción de desestimación al amparo de la Regla 10.2(5), o en la alternativa, de la Regla 10.3 de Procedimiento Civil, 32 LPRA Ap. V[10]. Enfatizó que la primera causa de acción de la reconvención debía desestimarse por ser contraria a derecho, toda vez que el BPPR carecía de una causa de acción basada en el hecho de que se había instado una demanda civil en su contra. Sostuvo, además, que las alegaciones del BPPR no incluían hecho demostrativo alguno que, dándolo por admitido, fuera suficiente para

---

[8] Entrada 271 SUMAC TPI.

[9] Entrada 276 SUMAC TPI.

[10] Entrada 277 SUMAC TPI.

satisfacer el estándar probatorio requerido. Añadió que el análisis respecto a la persecución maliciosa debía evaluarse mediante un juicio plenario.

En respuesta, el 21 de junio de 2024, el BPPR presentó su oposición a la solicitud de desestimación[11].

Evaluados los planteamientos de las partes litigantes, el 9 de marzo de 2026[12], el foro recurrido dictó su *Sentencia Parcial*, en la que declaró con lugar la solicitud de sentencia sumaria parcial sobre la primera causa de acción de la reconvención y sin lugar la moción de desestimación[13].

El foro primario formuló treinta y cinco (35) determinaciones de hechos. Concluyó que los demandantes-apelantes habían incumplido con sus obligaciones contractuales al instar una acción judicial en contra del BPPR, luego de haberse obligado mediante renuncias y relevos a no hacerlo. Esto, únicamente en cuanto a las causas de acción que fueron desestimadas mediante la *Sentencia Parcial* del 30 de junio de 2023[14].

En desacuerdo, el 25 de marzo de 2026, la parte apelante solicitó reconsideración[15], pero el foro *a quo* no varió su dictamen[16]. Inconforme, con dicha determinación, la parte apelante instó este recurso, en el que formuló los siguientes señalamientos de error:

> Erró el TPI al declarar Ha Lugar la Moción de Sentencia Sumaria Parcial del BPPR y dictar sentencia declaratoria sobre la Primera Causa de Acción de la Reconvención, concluyendo que la presentación de la demanda constituyó un incumplimiento contractual compensable, aun cuando la reclamación de BPPR procura, en sustancia, obtener daños indeterminados por la presentación y prolongación de un pleito civil parcialmente subsistente.

> Erró el TPI al negarse a desestimar la Primera Causa de Acción de la Reconvención, a pesar de que las alegaciones del BPPR sobre violación intencional, dolo, frivolidad, temeridad y daños indeterminados son conclusorias y no

---

[11] Entrada 287 SUMAC TP.

[12] Notificada el 10 de marzo de 2026.

[13] Entrada 341 SUMAC TPI.

[14] *Íd.* En la nota al calce cincuenta y cinco (55), el foro primario explicó que "el BPPR únicamente está solicitando un remedio declaratorio, y no se están solicitando en esta etapa una adjudicación sobre los daños ocasionados por el incumplimiento contractual".

[15] Entrada 344 SUMAC TPI.

[16] Entrada 345 SUMAC TPI.

configuran una reclamación que justifique la concesión de un remedio.

Erró el TPI al disponer sumariamente de la Primera Causa de Acción de la Reconvención, aun cuando la moción dispositiva del BPPR incumplió con los requisitos procesales aplicables y pretendió adjudicar asuntos vinculados a intención, dolo, malicia, frivolidad, temeridad y daños sin la prueba requerida.

Erró el TPI al dictar sentencia declaratoria sobre la Primera Causa de Acción de la Reconvención, aun cuando BPPR no demostró un daño claro, palpable, real, inmediato y preciso, ni una controversia genuina que justificara el uso de ese mecanismo remedial, particularmente cuando el remedio provisto por nuestro ordenamiento para atender la presentación o prolongación injustificada de un pleito es la imposición de costas y honorarios de abogado; no una causa de acción independiente por incumplimiento contractual.

Erró el TPI al extender el efecto de la *Sentencia Parcial* de 30 de junio de 2023 más allá de lo adjudicado, transformando la validez defensiva de ciertas cláusulas de relevo en una determinación afirmativa de incumplimiento contractual contra los demandantes por haber acudido al foro judicial.

Por su parte, el 12 de junio de 2026, la parte apelada presentó su oposición al recurso. Examinados los escritos de las partes, así como la *Sentencia Parcial* recurrida, resolvemos.

II

A

La Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, establece que una moción de sentencia sumaria debe estar fundada en declaraciones juradas, o por aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. En su consecuencia, podrá dictarse sentencia sumaria cuando no exista ninguna controversia real sobre los hechos materiales y esenciales del caso y, además, si el derecho aplicable lo justifica. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Un hecho material "es aquel que tiene un impacto sobre el resultado de la reclamación según el derecho sustantivo aplicable". *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). A su vez, la controversia relacionada a un hecho material debe ser real, "por lo que cualquier duda es insuficiente para derrotar una Solicitud de Sentencia Sumaria". *Íd.*, a las págs. 213-214.

De otra parte, al evaluar la solicitud de sentencia sumaria, "se tendrán como ciertos los hechos no controvertidos que consten en los documentos y las declaraciones juradas ofrecidas por la parte promovente". *Piñero v. A.A.A.*, 146 DPR 890, 904 (1998).

Con relación a los hechos relevantes sobre los cuales se plantea la inexistencia de una controversia sustancial, la parte promovente "está obligada a desglosarlos en párrafos debidamente enumerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR, a la pág. 432. Por su lado, la parte promovida tiene el deber de refutar los hechos alegados, con prueba que controvierta la exposición de la parte que solicita la sentencia sumaria. *López v. Miranda*, 166 DPR 546, 563 (2005).

A esos efectos, procede que se dicte sentencia sumaria únicamente cuando de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia, demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y, además, si el derecho aplicable así lo justifica. *Oriental Bank v. Caballero García*, 212 DPR 671, 678-679 (2023). Cumplidos estos requisitos, resulta innecesaria la celebración de un juicio, pues únicamente resta aplicar el derecho a los hechos no controvertidos. *Íd.*

En sentido contrario, no procede resolver un caso por la vía sumaria cuando: (1) existen hechos materiales y esenciales controvertidos; (2) hay alegaciones alternativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o, (4) como cuestión de derecho, no procede. *Echandi v. Stewart Title Guaranty Co.*, 174 DPR 355, 368 (2008).

El Tribunal Supremo de Puerto Rico ha resuelto que "no es aconsejable utilizar la moción de sentencia sumaria en casos donde existe

controversia sobre elementos subjetivos, de intención, propósito mentales o negligencia, o cuando el factor de credibilidad es esencial y está en disputa". *Ramos Pérez v. Univisión*, 178 DPR, a la pág. 219 (citando a *Soto v. Hotel Caribe Hilton*, 137 DPR 294 (1994)). No obstante, esto no impide utilizar el mecanismo de sentencia sumaria en reclamaciones que requieren elementos subjetivos o de intención cuando de los documentos que habrán de considerarse en la solicitud de sentencia sumaria surge que no existe controversia respecto de los hechos materiales. *Íd.*

B

El mecanismo de sentencia declaratoria provisto por la Regla 59 de Procedimiento Civil, 32 LPRA Ap. V, permite que el tribunal conceda un dictamen en un proceso judicial en el cual los hechos alegados demuestran que existe una controversia sustancial entre partes que tienen intereses legales adversos, sin que medie lesión previa de los mismos, ello con el propósito de disipar la incertidumbre jurídica y contribuir a la paz social. R. Hernández Colón, *Práctica Jurídica de Puerto Rico Derecho Procesal Civil*, Sexta Ed., San Juan, LexisNexis, pág. 880. Su objetivo es proveer al ciudadano un mecanismo procesal de carácter remedial mediante el cual pueda anticiparse a dilucidar ante los tribunales los méritos de cualquier reclamación que pueda representar un peligro potencial en su contra. J. Cuevas Segarra, *Tratado de Derecho Procesal*, 2da ed., Publicaciones JTS, 2011, Tomo V, pág. 1788.

El empleo de la sentencia declaratoria está limitado. La controversia no debe ser abstracta, teórica, remota, académica o especulativa. *Moscoso v. Rivera*, 76 DPR 481, 492-493 (1954). Debe ser actual, y el daño que se pueda ocasionar no debe ser demasiado especulativo. *Íd.* El peso de la prueba de que existe una controversia real a ser adjudicada es del peticionario. Cuevas Segarra, *op. cit.*, pág. 1796. La controversia debe establecer una comparación entre determinados intereses públicos y sociales que puedan quedar afectados, y los intereses privados de las partes. *Íd.* Su necesidad debe tener raíces en la realidad.

En fin, la sentencia declaratoria es un mecanismo remedial y profiláctico que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales, siempre y cuando exista un peligro potencial contra el promovente. *Beltrán Cintrón et. Al. v. ELA et al.*, 204 DPR 89, 109 (2020) (citando a *Senado de PR v. ELA*, 203 DPR 62, 71 (2019)); *Suárez v. C.E.E. I*, 163 DPR 347, 354 (2004); *Charana v. Pueblo*, 109 DPR 641, 653-654 (1980). Constituye el medio adecuado para que los tribunales ejerzan su función de interpretar las leyes, declarando el estado de derecho vigente. *Sánchez et al. v. Srio. de Justicia et al.*, 157 DPR 360, 383-384 (2002).

C

En nuestro sistema de derecho civil, toda obligación consiste en dar, hacer o **no hacer alguna cosa.** Art. 1041 del Código Civil, 31 LPRA ant. Sec. 2991[17]. Así, las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil, 31 LPRA ant. sec. 2992.

En cuanto a los contratos, las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de estos. Art. 1044 del Código Civil, 31 LPRA ant. sec. 1994. "Consecuentemente, un contrato existe desde que una o varias personas prestan su consentimiento a obligarse a dar alguna cosa o prestar algún servicio". *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR 448, 455 (2014).

Los contratos serán válidos si concurren tres elementos: consentimiento, objeto y causa. Art. 1213 del Código Civil, 31 LPRA ant. sec. 3391. A su vez, estos "serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones para esenciales para su validez". Art. 1230 del Código Civil, 31 LPRA ant.

---

[17] A pesar de que el Código Civil de Puerto Rico, Ed. 1930, fue derogado efectivo el 28 de noviembre de 2020, por el Código Civil de Puerto Rico de 2020, Ley Núm. 55 de 1 de junio de 2020, a la controversia de autos le aplica el derogado Código Civil, pues los hechos se suscitaron durante la vigencia de este.

sec. 3451. Así pues, los contratos "se perfeccionan por el mero consentimiento, y desde entonces, obligan, no solo a lo expresamente pactado, **sino también a todas las consecuencias** que según su naturaleza sean conformes a la buena fe, al uso y a la ley". Art. 1210 del Código Civil, 31 LPRA ant. sec. 3375. (Énfasis suplido).

De otra parte, el principio de la autonomía contractual "permite que las partes contratantes establezcan los pactos, las cláusulas y las condiciones que entiendan convenientes". *Rodríguez Ramos et al. v. ELA et al.,* 190 DPR, a las págs. 455-456; Art. 1207 del Código Civil, 31 LPRA ant. sec. 3372. Esa autonomía estará limitada únicamente, y el contrato será nulo e inexistente, si este último resulta contrario a las leyes, a la moral o al orden público. *Rodríguez Ramos et al. v. ELA et al.*, 190 DPR, a la pág. 456.

D

En relación con las causas del incumplimiento, se entendía que el Art. 1054 del Código Civil de 1930, 31 LPRA ant. sec. 3018, era "la fuente normativa principal para la concesión de daños como consecuencia del incumplimiento de una obligación *de naturaleza contractual*, sean éstos moratorios o compensatorios". J.R. Vélez Torres, *Derecho de Obligaciones*, 2da Ed., San Juan, Escuela de Derecho de la Universidad Interamericana, 1997, pág. 273. (Bastardillas en el original). El precitado artículo, hoy derogado, disponía que estaban "sujetos a la indemnización de daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de ellas". Art. 1054 de Código Civil de 1930, 31 LPRA ant. sec. 3018.

En lo atinente, en *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 17 (2015) el Tribunal Supremo de Puerto Rico resolvió que el deber de defenderse de una de las partes contratantes **se había activado con la presentación de la demanda en cuestión**. Ello, conforme a lo dispuesto en la cláusula de relevo de responsabilidad "hold harmless" acordada entre

las partes, que imponía la obligación de defender o proveer representación legal. En particular, dicho foro expresó que:

> [E]n materia de acuerdos de liberación de responsabilidad en el *common law* estadounidense, **el incumplimiento con la obligación** de defender o proveer representación legal **da lugar a una <u>acción por incumplimiento de contrato</u>** en la que se solicita el reembolso de los gastos y honorarios de abogado en los que tuvo que incurrir la parte afectada. *Crawford v. Weather Shield Mfg. Inc.*, supra, págs. 557-558. **Esto es compatible con lo dispuesto en el Art. 1054** del Código Civil de Puerto Rico, 31 LPRA sec. 3018 […].

*Burgos López et al. v. Condado Plaza*, 193 DPR, a la pág. 14. (Énfasis y subrayado suplidos).

En ese sentido, el alcance de los acuerdos de indemnización o relevo de responsabilidad puede ser objeto de negociación, salvo que la ley lo prohíba. *Íd.*, a la pág. 13. En otras palabras, los contratantes determinarán el grado de responsabilidad y riesgo que asumirán respectivamente. *Íd.* "Así, y a diferencia de la responsabilidad extracontractual, los detalles y las circunstancias en las que se activará y será exigible la responsabilidad contractual dependerán del lenguaje específico que acuerden las partes". *Íd.*

A tales efectos, la acción *ex contractu* atiende los daños derivados del incumplimiento del contrato y procede en aquellos casos en que el reclamo está fundamentado en el quebrantamiento o incumplimiento de una obligación contractual. *Unión Independiente Auténtica v. Santander Securities LLC y otros*, 214 DPR 601, 626 (2024). Dicha acción procura indemnizar los daños que se derivan del incumplimiento de obligaciones acordadas. *Íd.*

III

Luego de examinar *de novo* el trámite procesal, el expediente ante nos, los escritos de las partes litigantes, así como la normativa aplicable, concluimos que el foro primario no incidió en su determinación. Veamos.

De entrada, nos corresponde analizar el tercer y quinto señalamiento de error. La parte apelante sostiene que el foro recurrido incidió al disponer sumariamente de la primera causa de acción de la reconvención, toda vez que pretendió adjudicar asuntos concernientes a

intención, dolo, malicia, frivolidad y daños sin la prueba requerida, y porque la moción dispositiva de la parte apelada incumplía con la normativa procesal aplicable. De igual forma, alega que el foro primario incidió al transformar la validez defensiva de ciertas cláusulas de relevo en una determinación afirmativa de incumplimiento contractual. No le asiste la razón.

En particular, los apelantes sostienen que la validez defensiva de los relevos no prueba, por sí sola, que estos hubieran actuado mediando dolo, intención indebida, temeridad o frivolidad, como tampoco prueba los supuestos daños sufridos. Aduce que la mera presentación de la demanda original no podía utilizarse como fundamento automático para una declaración de incumplimiento contractual. Argumenta que la sentencia sumaria resultó prematura dado que estaba pendiente una solicitud de enmienda a la demanda cuyo propósito era excluir o limitar las reclamaciones renunciadas.

Manifiesta que el BPPR pretende utilizar la *Sentencia Parcial* previa como plataforma para obtener una declaración nueva; es decir, que los demandantes-apelantes habían incumplido contractualmente al acudir al tribunal. Insiste en que lo previamente adjudicado fue que ciertos reclamos no prosperarían en virtud de los relevos contractuales, y que otros subsistirían, y no que la presentación de dichos reclamos fuera, en sí misma, un incumplimiento contractual compensable.

Ahora bien, destacamos que el mecanismo de sentencia sumaria en reclamaciones que requieren elementos subjetivos o de intención está disponible cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia respecto de los hechos materiales. *Ramos Pérez v. Univisión*, 178 DPR, a la pág. 219. Tómese en cuenta que el foro primario emitió un dictamen declaratorio respecto a la validez de los aludidos relevos y la consecuencia jurídica derivada de la contravención de la obligación **de no hacer** pactada entre las partes

litigantes. Arts. 1041 y 1210 del Código Civil, 31 LPRA ant. secs. 2991, 3375.

En ese sentido, de la propia *Sentencia Parcial* emitida el 30 de junio de 2023, surge la validez de los relevos de responsabilidad suscritos por la parte apelante con posterioridad al 2010, y con anterioridad al 23 de octubre de 2017[18]. Entonces, no cabe duda de que al presentar la demanda el 24 de febrero de 2020, la parte apelante incumplió con su obligación contractual de no demandar al BPPR, conforme se había obligado en el *Amended and Restated Credit Agreement*, sus subsiguientes enmiendas y en el *Acuerdo de Moratoria*[19]. Ciertamente el aludido quebrantamiento en la obligación pactada es de naturaleza contractual.

Así pues, el foro primario no incidió al determinar que la primera causa de acción de la reconvención no era una reclamación de daños y perjuicios extracontractuales, sino un reclamo de incumplimiento de contrato. Coincidimos con el foro de primera instancia en cuanto a la inexistencia de controversias reales sobre hechos materiales que impidieran la disposición de la primera causa de acción de la reconvención por la vía sumaria. En consecuencia, los errores apuntados por la parte apelante no fueron cometidos.

Por estar estrechamente relacionados, discutiremos en conjunto el primer y cuarto señalamiento de error. Los planteamientos de la parte apelante están dirigidos a establecer que el foro *a quo* incidió al dictar sentencia declaratoria sobre la primera causa de acción de la reconvención, aun cuando: (a) la reclamación del BPPR procura obtener daños indeterminados por la presentación y prolongación de un pleito civil parcialmente subsistente; y (b) el BPPR no demostró un daño claro, palpable, real, inmediato y preciso, ni una controversia genuina que justificara el uso de ese mecanismo remedial. Veamos.

---

[18] Entrada 237 SUMAC TPI, a la pág. 27.

[19] *Véase*, la *Sentencia Parcial* del 9 de marzo de 2026, para una descripción detallada de las cláusulas contractuales pertinentes. Entrada 341 SUMAC TPI, a las págs. 6-12.

El BPPR solicitó del tribunal, mediante la primera causa de acción de la reconvención, que declarara que las renuncias, relevos y compromisos concernientes a la obligación de no demandar al BPPR eran válidos y vinculaban a la parte apelante.

Como se expuso anteriormente, el propósito de la sentencia declaratoria es disipar una incertidumbre jurídica. *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR, a la pág. 109. En este caso, existía una controversia sustancial entre las partes que tenían intereses legales adversos. *Íd.* En particular, las partes litigantes mantenían posiciones encontradas sobre la naturaleza de la reclamación en la primera causa de acción de la reconvención y el efecto jurídico de las cláusulas contractuales suscritas por ambas.

Por otro lado, es norma reiterada que, cuando una parte contraviene los términos de un contrato, está sujeta a resarcir los daños causados. Art. 1054 del Código Civil de 1930, 31 LPRA ant. sec. 3018. Véase, *Burgos López et al. v. Condado Plaza*, 193 DPR, a las págs. 13-14.

Así las cosas, el foro primario emitió un dictamen declarativo que disipó la incertidumbre jurídica respecto a la validez de los acuerdos y su efecto jurídico; ello, sin mediar adjudicación alguna sobre daños. Dicho foro aclaró que el reclamo de la primera causa de acción de la reconvención era de naturaleza contractual, y concluyó que "deberá presentase prueba sobre la determinación de la indemnización, **si alguna**, o remedio correspondiente por el incumplimiento de contrato". (Énfasis suplido). Esto, ya que existen otras causas de acción y reclamaciones de la parte apelante que han subsistido y serán objeto del proceso evidenciario pertinente. Siendo ello así, el proceder del Tribunal de Primera Instancia no es incompatible con la Regla 59 de Procedimiento Civil, 32 LPRA Ap. V. En consecuencia, coincidimos con lo resuelto por el foro recurrido. Por tales razones, los errores señalados no fueron cometidos.

Finalmente, en cuanto al segundo señalamiento de error, la parte apelante sostiene que el foro primario incidió al no desestimar la primera

causa de acción de la reconvención, toda vez que las alegaciones del BPPR sobre violación intencional, dolo, frivolidad, temeridad y daños indeterminados son conclusorias y no configuran una reclamación que justifique la concesión de un remedio.

Respecto a ello, nótese que, desde la *Sentencia Parcial* emitida el 30 de junio de 2023, la cual es final y firme, se precisó la validez de los relevos de responsabilidad en cuestión, mediante los cuales la parte apelante se comprometió a no demandar al BPPR por determinados hechos. A su vez, es indiscutible que, el 24 de febrero de 2020, la parte apelante instó la presente reclamación judicial. Según discutimos, contrario a lo que arguye la parte apelante, la primera causa de acción de la reconvención trata de un reclamo de incumplimiento de contrato. Por tanto, luego de tomar como ciertos todos los hechos bien alegados y considerarlos de la manera más favorable a la parte apelada, coincidimos con el foro primario en que dicha parte podía tener derecho a la concesión de algún remedio. Es decir, procedía el remedio declaratorio emitido por el tribunal. Por ello, concluimos que el segundo error señalado tampoco fue cometido.

IV

Conforme a los hechos y el derecho antes expuestos, este Tribunal **confirma** la *Sentencia Parcial* emitida el 9 de marzo de 2026, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de San Juan.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones